David L. Koen, OSB No. 080941
david.koen@lasoregon.org
LEGAL AID SERVICES OF OREGON
520 SW 6th Ave., Ste. 700
Portland, OR 97204
(503) 224-4086

Emily Teplin Fox, OSB No. 121720
efox@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
OREGON LAW CENTER
522 SW 5th Ave, Suite 812
Portland, OR  97204
(503) 473-8310

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LINDA MARQUARD and DAVID MARQUARD,<br><br>      Plaintiffs,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC, doing business as SHELLPOINT MORTGAGE SERVICING; and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-3,<br><br>      Defendants. | Case No. 3:17-cv-549<br><br>COMPLAINT FOR<br><br>1. Violations of Real Estate Settlement Procedures Act<br><br>2. Breach of contract<br><br>3. Violations of Unlawful Trade Practices Act<br><br>4. Conversion<br><br>5. Violation of Americans with Disabilities Act<br><br>6. Disability discrimination (ORS 659A.142(4)<br><br>7. Violation of Fair Housing Amendments Act<br><br>8. Disability discrimination (ORS |

659A.145)

DEMAND FOR JURY TRIAL

INTRODUCTION

1.      This case arises from abusive mortgage servicing practices that threaten the ability of a Portland woman, fighting for her life against terminal cancer, to keep her and her disabled husband's home.

2.      Linda Marquard, who is 60 years old, suffers from the most advanced form of lung cancer. Her husband, David Marquard, 61, is also disabled. The Marquards are on a fixed income consisting entirely of monthly Social Security disability benefits of $2,485 and food stamps of $390.

3.      The Marquards participate in the Oregon Property Tax Deferral for Disabled and Senior Citizens program under which, because of Mr. Marquard's disability, the State will pay their county property taxes in November 2017.

4.      Despite the fact that the State – not the Marquards – will pay their property taxes in November 2017, defendants have insisted that the Marquards send them money each month for an escrow of the taxes, unlawfully driving up their monthly payment by at least $342.44 to $2,007.28.  As a result, the Marquards are spending the last months of Ms. Marquard's life worrying that they will lose their home and become homeless.

2-      COMPLAINT

5.      The Marquards bring this action to obtain a declaration that defendants have improperly collected escrow amounts for these taxes under the Real Estate Settlement Procedures Act; to obtain a declaration that they improperly refused the Marquards' request to stop collecting these amounts; to stop them from continuing to collect these sums; and to recover actual, statutory and punitive damages as a result of their unlawful acts.

6.      Defendants have violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2605 and 2609; the loan agreement governing the rights and obligations of the parties; the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.608(1)(u) and its implementing regulation, OAR 137-020-0805; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182; ORS 659A.142(4); the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3605; and ORS 659A.145. Defendant New Penn Financial, LLC, doing business as Shellpoint Mortgage Servicing ("Shellpoint"), also has converted amounts paid them by the Marquards.

JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this matter arises under RESPA, 12 U.S.C. §§ 2605 and 2609.

8.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      Venue is proper in the District of Oregon, Portland Division, as all the transactions alleged occurred in Portland, Oregon.

PARTIES

3-      COMPLAINT

10.    Linda Marquard is an individual who is, and at all times relevant to this action has been, a citizen of Multnomah County, Oregon.

11.    David Marquard is an individual who is, and at all times relevant to this action has been, a citizen of Multnomah County, Oregon.

12.    New Penn Financial, LLC, doing business as Shellpoint, is a Delaware limited liability company authorized to do business in Oregon. New Penn Financial, LLC, has an office in and makes mortgage loans in Multnomah County, OR, It states on its website:

> When not catching a Trail Blazer's game, or strolling the beautiful waterfront, our loan officers are working hard to improve their community and the neighbors that share the area with them. Portland is and always has been home to many of us. That's why we go the extra mile to make securing a home loan as easy as possible. After all, it is the neighborly thing to do!

https://www.newpennfinancial.com/locations/portland. Shellpoint's principal place of business is 4000 Chemical Road, Suite 200, Plymouth Meeting, PA 19462.

13.    The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-3 (BONY), is a national corporation authorized to do business in Oregon. BONY's principal place of business is 500 Grant St., Pittsburgh, PA 15219.

14.    Shellpoint is a loan "servicer" of the Marquards' "federally related mortgage loan" as those terms are defined in RESPA, 12 U.S.C. §§ 2602(1) and 2605(i)(2).

FACTUAL ALLEGATIONS

15.    In 2005, Linda Marquard bought the Marquards' home at 3560 NE Lombard Court, Portland, OR.

4-    COMPLAINT

16.     In 2007, the Marquards refinanced their home with the loan at issue in this matter, and David Marquard was added to the title.

17.     The deed of trust for the home states, in pertinent part, "Lender may, at any time, collect and hold Funds in an amount . . . not to exceed the maximum amount a lender can require under RESPA." § 3.

18.     The promissory note specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to the Note Holder. § 7(E). The deed of trust specifically provides that attorney fees and costs incurred to enforce provisions of the contract shall be awarded to the Lender. § 22.The

19.     On information and belief, BONY has purported to be the Note Holder and Lender since 2007.

20.     For all relevant purposes herein, Shellpoint has been and is the agent of BONY.

21.     In February 2011, Ms. Marquard was laid off from her job as associate director of strategic planning for an energy conservation non-profit. Her salary in 2010 was $112,700.

22.     Several months later, the Marquards found themselves unable to continue making their home loan payment.

23.     In 2014, Mr. Marquard was found to be disabled by the Social Security Administration. He has two ruptured discs in his lower back, stemming from prior work, most recently from lifting a concrete fountain at nursery.

24.     Mr. Marquard's injury causes him back pain and numbness in his legs.

25.     Despite these setbacks, the Marquards fought to keep their home.

5-     COMPLAINT

26.    In August 2015, to try to increase her family's income, Ms. Marquard took a part-time job at a Fred Meyer supermarket as a cashier, making $10.50 per hour. Ms. Marquard also completed tasks to earn small amounts from Amazon.com's Amazon Mechanical Turk program.

27.    Then, in March 2016, Ms. Marquard learned that she had non-small cell lung cancer and was unable to work any longer. She had surgery to remove the upper lobe of her right lung.

28.    By this time, the Marquards had applied to modify their loan multiple times. But each time, they were turned down.

29.    With little hope of saving their home, the Marquards nevertheless refused to give up. They learned about a state program called the Oregon Property Tax Deferral for Disabled and Senior Citizens program. The program helps low-income disabled Oregonians, like the Marquards, by paying their property taxes.

30.    If they qualified, the program would pay their property taxes due in November 2016 and November 2017.  Moreover, under the program, the deferred taxes, including interest thereon, would not need to be repaid until:

     a.    the Marquards and their survivors die;

     b.    the Marquards' home were sold, a contract to sell were to be entered into, or some person other than the Marquards were to become the owner; or

     c.    the home were to no longer either of the Marquards' homestead except if both of them were required to be absent from their home by reason of health.

ORS 311.684.

6-    COMPLAINT

31.     In June 2016, the Marquards' application was granted. The State agreed to pay the Marquards' property taxes of $4,109.31 due in November 2016 and November 2017. By paying the Marquards' property taxes, the State had made the Marquards' ability to save their home more likely.

32.     The State's payment meant that BONY would no longer need to collect money every month from the Marquards and place it in an escrow account to make sure their property taxes would be paid. In other words, the State had just effectively reduced the Marquards' mortgage payment by at least $342.44 per month, *i.e.*,1/12th of the $4,109.31 tax bill.

33.     Or so the Marquards thought.

34.     Despite the Marquards' disabilities and dire circumstances, defendants refused to confer on them the benefit they stood to gain from their property tax deferral. This refusal persisted even though on July 19, 2016, the State filed a notice of lien in connection with the property deferral, thereby putting BONY (and, eventually, Shellpoint) on constructive notice that the State would pay the Marquards' property taxes due in November 2016 and November 2017.

35.     The Marquards' hope was that if they could somehow get more income, the property tax deferral program might just make the difference between them getting a modification and losing their home. After all, they thought, the effective reduction of their monthly mortgage payment via the property tax deferral program -- along with whatever reduction BONY might make to their monthly principal and interest payments – might result in a payment they might be able to afford.

36.     For its part, BONY was not idly standing by waiting for the Marquards' fortunes to improve. In July 2016, through its then-loan servicer Specialized Loan Servicing, LLC (SLS),

7-     COMPLAINT

BONY initiated a proceeding that would give the Marquards one final chance to try to modify their home before the lender could foreclose on it, the Oregon Foreclosure Avoidance Program (OFAP). BONY did not, however, offer the Marquards the opportunity to participate in this mediation-like program beneficently. Rather, BONY was effectively required to do so as a prerequisite to beginning foreclosure proceedings. *See* ORS 86.752(4)(a); ORS 88.010(2)(a)(A).

37.    Then, in September 2016, Ms. Marquard was hit with the worst blow yet. Her cancer had spread, and she was diagnosed with Stage IV non-small cell lung cancer (NSCLC), the most advanced form of the disease. The median survival time for those with Stage IV non-small cell lung cancer is about eight months.

38.    The Marquards' darkest hour, however, did contain a tiny ray of hope – Ms. Marquard's diagnosis meant that she and her husband's ability to modify their loan had finally become a reality.

39.    After Ms. Marquard's diagnosis, she applied for Social Security Disability Insurance (SSDI) under the Social Security Administration's expedited Compassionate Allowances Initiative. In October, her application was granted, and she began receiving SSDI.

40.    Though the Marquards' income was still limited to Social Security benefits and food stamps, they now hurried to apply once more for a modification while still in the OFAP.

41.    On November 1, 2016, the Marquards submitted an application for a Home Affordable Modification Program (HAMP) loan modification. With their application, they included the State's notification of their property tax deferral. Thus BONY, through SLS, the company then servicing the loan, was again put on notice that the State would pay the Marquards' property taxes due in November 2016 and November 2017.

8-    COMPLAINT

42.     On November 7, 2016, the Marquards' years-long quest to modify their loan finally seemed to be paying off. At the OFAP meeting between them and SLS that day, they were informed that they had received a HAMP modification.

43.     Under this program, the Marquards would be required to make three trial period payments. If they were successful, the lender would permanently modify their loan.

44.     The Marquards' euphoria about their modification, however, did not last. SLS's representative made it clear that the amount of the Marquards' monthly trial period payment would be $2,105.83, and would indeed include an escrow for property taxes. In other words, the payment was at least $342.44 higher than should have been because SLS, on behalf of BONY, had decided that despite the property tax deferral, the Marquards would need to continue to pay monthly property taxes.

45.     The Marquards requested that SLS not include an escrow for property taxes as the State had notified them that it would pay them.

46.     SLS – on behalf of BONY – however, wouldn't budge.

47.     Instead, SLS stated that if the Marquards made the three trial period payments, it would reanalyze the escrow account. Thus, SLS – on behalf of BONY – led the Marquards to believe that the lender would honor the property tax deferral at the conclusion of the trial period.

48.     On December 1, 2016, the Marquards made their first trial period payment.

49.     On December 2, 2016, servicing of the loan was transferred to Shellpoint. The Marquards did not know it yet, but their troubles would continue.

9-     COMPLAINT

50.     When the servicing of the loan was transferred, Shellpoint had in its possession a copy of the approval of the Marquards' property tax deferral application. Yet it continued to collect for the property taxes.

51.     On January 20, 2017, in another attempt to get Shellpoint to drop the escrow for the property taxes, Mr. Marquard again sent a copy of the State's approval of the Marquards' property tax deferral application along with an account statement. This effort, too, was unavailing.

52.     The Marquards would not be deterred. They made their final two trial period payments, in January and February 2017.

53.     And on the date the final payment under the trial period plan was due, February 1, 2017, they tried to ensure that Shellpoint would now fix the error that the previous servicer had made.

54.     On that date, pursuant to RESPA, they sent a notice of error, demanding that Shellpoint stop escrowing for property taxes.

55.     RESPA prohibits servicers from escrowing amounts for property taxes unless they are "reasonably anticipated to be paid on dates during the ensuing twelve months[.]" 12 U.S.C. § 2609(a)(2).

56.     By letter dated February 20, 2017, Shellpoint failed to correct the error. Instead, it responded, in pertinent part, "we do not have information from the state of Oregon advising that your property taxes will be temporarily paid for by another entity or that your taxes are not due for 2017."

10-    COMPLAINT

57.     What Shellpoint did not mention is that starting from the date it began servicing the Marquards' loan, December 2, 2016, it in fact had a copy of the State's approval of the Marquards' property tax deferral application confirming that the State would pay their property taxes in November 2017.

58.     What Shellpoint also did not mention is that on January 20, 2017, Mr. Marquard again sent a copy of this document to the servicer along with a copy of the State of Oregon's Annual Statement of Account for the property tax deferral, dated December 9, 2016, showing that the State had made good on the first of the two payments for the property taxes it had agreed to make.

59.     What Shellpoint further failed to mention is that it had constructive notice of the State's agreement to pay the property taxes in November 2017 via a notice of lien that the State would pay the Marquards' property taxes in November 2017. And what the servicer also declined to mention is that it could have – on information and belief – gone to the Multnomah County, Oregon Property Records website, typed in the Marquards' address, and read the words "DISABLED CITIZEN TAX DEFERRAL" that popped up. *See* http://multcoproptax.org/property.asp?PropertyID=R136902. Shellpoint also declined to mention that – on information and belief – it could have called the Multnomah County Assessment, Recording & Taxation to confirm that the State would pay the Marquards' property taxes in November 2017. Moreover, it could have gone to the 2017 Oregon Property Tax Deferral for Disabled and Senior Citizens booklet and read the following:

**Do I need to apply for deferral each year?**

11-    COMPLAINT

No, but every two years after you're approved, you'll need to certify that you still meet all of the qualifications. When it's time to recertify, we'll send you a recertification application.

https://www.oregon.gov/DOR/forms/FormsPubs/deferral-disabled-senior_490-015.pdf, at 4 (emphasis in original).

60.    Shellpoint's letter dated February 20, 2017, nevertheless continued, "If you have documentation advising that your 2017 property taxes have been paid or are not due, please send this documentation to us."

61.    Accordingly, on February 27, 2017, the Marquards – through their attorney – again sent to Shellpoint Mr. Marquard's email attaching the State's notice of its approval of their property tax deferral application as well as the notice of lien. This effort, too, however, was unavailing.

62.    Still hoping to resolve the problem without litigation, on March 1, 2017, the Marquards sent a complaint to the Consumer Financial Protection Bureau (CFPB).

63.    Shellpoint responded to the complaint, in pertinent part, "Because the tax deferral program does not eliminate the borrower's liability for the payment of the property tax, must we continue to escrow for the property taxes and disburse payments to your taxing authority accordingly."

64.    Shellpoint did not respond to the Marquards' allegation that its refusal to stop escrowing for property taxes violated RESPA.

65.    Shellpoint's response failed to include the name and telephone number of a representative of the servicer who could provide assistance to the Marquards.

12-    COMPLAINT

66.     Shellpoint's actions and inactions with respect to the Marquards' notice of error constitute a pattern or practice of noncompliance with the requirements of  RESPA, 12 U.S.C. § 2605, both in and of themselves and with respect to qualified written requests of others whose loans have been serviced by the servicer.

67.     On information and belief, these violations include, but are not limited to, noncompliance with the requirements of RESPA that Shellpoint admitted to in *Martinez v. Shellpoint Mortg. Servicing*, No. 16-60026-CIV (S.D. Fla. Dec. 7, 2016), and which the servicer committed as alleged in *Gunter v. New Penn Financial, LLC*, No. 1:16-cv-00603-KD-B (S.D. Ala. Dec. 5, 2016).

68.     The Marquards' loan has now been permanently modified. The modified payment contains an escrow for property taxes.  And the Marquards have made the first payment due under the modified loan, though they did so under protest, as they have since making their first trial period payment.

69.     In all payments at issue here, the Marquards have included the amount defendants have demanded for the escrow of their property taxes because – given Ms. Marquard's serious health condition – they wanted to avoid the initiation of foreclosure proceedings by defendants and the potential expense, inconvenience and stress of stopping such proceedings by way of litigation.

70.     However, the Marquards cannot afford to continue paying the amounts defendants demand for property taxes. Including the wrongly escrowed amounts, the Marquards' monthly mortgage payment constitutes over 80% of the income they receive from the Social Security Administration. Unless defendants reduce their monthly payment in a manner that comports with

13-    COMPLAINT

RESPA and the Oregon Property Tax Deferral for Disabled and Senior Citizens program, the Marquards face imminent risk of homelessness.

71.     After receiving the Marquards' payments, BONY and Shellpoint have at all times intentionally exercised exclusive control over the portion of payments intentionally collected for an escrow of property taxes.  And at all relevant times, Shellpoint has acted as BONY's agent.

72.     As a result of Defendants' unauthorized actions, Ms. Marquard has suffered severe emotional distress, including but not limited to anxiety, depression, nausea, headaches, anger, irritability and sleeplessness.

73.     As a result of Defendants' unauthorized actions, Mr. Marquard has suffered severe emotional distress, including but not limited to depression, headaches, anger, irritability and sleeplessness. As a further result of said actions, Mr. Marquard grinds his teeth in his sleep, leading to headaches, hearing loss, and trouble eating. Mr. Marquard's teeth-grinding has forced him to seek treatment from a physical therapist and will require that he get special dental care.

74.     On dates including but not limited to February 1, 2017, March 1, 2017, March 20, 2017, March 27, 2017, and March 31, 2017, pursuant to Sections 15 and 20 of the deed of trust, the Marquards notified defendants of the breach of and duties owed to the Marquards by reason of the deed, affording them a reasonable period after the giving of such notices to take corrective action. Defendants have failed to take any such corrective action.

## FIRST CLAIM FOR RELIEF

(Violations of the Real Estate Settlement Procedures Act, against Shellpoint)

75.     The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

14-    COMPLAINT

76.     Defendants violated and continue to violate RESPA, 12 U.S.C. § 2609(a)(2), and its implementing Regulation X, 12 C.F.R. § 1024.17(c)(1)(ii), by requiring and continuing to require that the Marquards deposit in their loan's escrow account a sum (for the purpose of assuring payment of taxes, insurance premiums and other charges with respect to the property) in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period.  As Shellpoint well knows, at all relevant times, the amount of property taxes that could reasonably be anticipated to be paid in the ensuing twelve months is $0.

77.     On February 1, 2017, the Marquards sent Defendant Shellpoint a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the servicer's escrow of amounts for property taxes. In the qualified written request, the Marquards specified the reasons for their belief that it was improper to collect these amounts and requested that Defendant Shellpoint correct the error. The Marquards also requested that Defendant Shellpoint provide them with a notification of the correction and the date of the correction.

78.     Defendant Shellpoint violated RESPA, 12 U.S.C. § 2605(e)(2)(B) and 12 C.F.R. §§ 1024.35(a) and 1024.35(e)(1)(B) by, without first conducting a reasonable investigation,

providing a statement to the Marquards of the reasons the servicer believed the their account was correct as determined by the servicer.

79.    Defendant Shellpoint violated RESPA, 12 U.S.C. § 2605(e)(2)(A) and 12 C.F.R. §§ 1024.35(a) and 1024.35(e)(1)(A), by failing to make appropriate corrections to the Marquards' account in response to the qualified written request; failing to transmit written notice of such corrections to the Marquards no later than 30 days after receipt of the Marquards' qualified written request; failing to provide the date of an effective correction; and failing to provide to them the name and telephone number of a representative of the servicer who could provide assistance to them.

80.    Shellpoint's violations of RESPA have resulted in actual damages to the Marquards, including but not limited to (a) amounts illegally collected and/or retained for the escrow of property taxes and (b) attorney fees expended in responding to the servicer's request for documentation showing the State would pay the property taxes due in November 2017.

81.    Shellpoint has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

82.    As a result of the above violations of RESPA, defendants are liable to the Marquards for a declaratory judgment that Defendants' conduct violated RESPA; injunctive relief, as set forth below; and the Marquards' actual damages, statutory damages, and costs and attorney's fees.

### SECOND CLAIM FOR RELIEF

(Breach of contract; against BONY)

16-    COMPLAINT

83.    The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

84.    The deed of trust for the home states, in pertinent part, "Lender may, at any time, collect and hold Funds in an amount . . . not to exceed the maximum amount a lender can require under RESPA." § 3.  Alternatively, implicit in every contract is the covenant of good faith and fair dealing. The Marquards' reasonable expectations under the agreement – based on RESPA and custom – were and are that BONY would have the right to collect an escrow for property taxes reasonably anticipated to be paid only in the next 12 months, not at some further point in the future. In violation of the deed of trust, BONY has collected and held funds in an escrow account in an amount exceeding the maximum amount a lender can require under RESPA.

85.    The Marquards have fully performed their obligations under the loan and are not in breach thereof.

86.    The Marquards are entitled to a judgment that under the deed of trust, there was and is no authority for defendant to collect amounts for the escrow of property taxes due in November 2017.

87.    As the Marquards' claim is based on breaches of the note and deed of trust identified herein, they are entitled to actual damages, reasonable attorney fees, and, in addition, to costs and disbursements in bringing this claim.

88.    The Marquards also are entitled to injunctive relief, as set forth below.

**THIRD CLAIM FOR RELIEF**

(Violation of Unlawful Trade Practices Act, against Shellpoint)

17-    COMPLAINT

89.    The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

90.    Shellpoint's violations of 12 U.S.C. § 2605(e) violate ORS 646.608(1)(u) and its implementing regulation OAR 137-020-0805(5).

91.    Shellpoint's collection of escrow amounts in violation of RESPA and the deed of trust, because it was unlawful, constitutes the failure to observe reasonable standards of fair dealing.

92.    Shellpoint's failure to observe reasonable standards of fair dealing constitutes the failure by the servicer to deal with the Marquards in good faith, in violation of ORS 646.608(1)(u) and OAR 137-020-0805(6).

93.    As a result of Shellpoint's violations of RESPA and the deed of trust, the Marquards suffered ascertainable loss, including but not limited to (a) amounts unlawfully required and paid, for the escrow of property taxes and (b) attorney fees expended in responding to the servicer's request for documentation showing the State would pay the property taxes due in November 2017.

94.    As a result of Shellpoint's violations of ORS 646.608(1)(u) and OAR 137-020-0805(5) and (6), the Marquards are entitled to actual damages (including but not limited to amounts wrongfully collected by the servicer), reasonable attorney fees, and, in addition, to costs and disbursements in bringing this claim.

95.    Shellpoint has shown a reckless and outrageous indifference to a highly unreasonabsle risk of harm and has acted with a conscious indifference to the welfare of others, warranting an award of punitive damages, to be proven at trial, of a minimum of $250,000.00.

18-    COMPLAINT

96.     The Marquards are entitled to injunctive relief, as set forth below.

## FOURTH CLAIM FOR RELIEF

(Conversion, against Shellpoint and BONY)

97.     The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

98.     At all times since receiving the Marquards' trial period and permanent loan modification payments, BONY and Shellpoint have intentionally and unlawfully exercised exclusive control over the portion of the payments wrongfully collected from plaintiffs for an escrow of property taxes.

99.     BONY's and Shellpoint's exclusive control over the portion of the payments wrongfully collected from the Marquards for an escrow of property taxes have completely interfered with the lawful right of plaintiffs to control the amounts unlawfully collected.

100.    Since receiving the unlawfully collected funds, BONY and Shellpoint have intended to assert control over them.

101.    BONY's and Shellpoint's exclusive control over the unlawful collection of amounts from the Marquards is, by definition, inconsistent with plaintiffs' right of control over them.

102.    BONY and Shellpoint have failed to exercise good faith in intentionally exercising control over the unlawfully collected funds – from the day the Marquards learned that BONY and Shellpoint would be collecting such funds, they have known – or should have known – that RESPA, the Oregon Unlawful Trade Practices Act and the deed of trust prohibited them from doing so.

19-    COMPLAINT

103.    BONY's and Shellpoint's exclusive control over the wrongfully collected funds have, at all times since their collection, constituted and continue to constitute a complete interference with the Marquards' right to control such amounts.

104.    BONY's and Shellpoint's intentional exercise of control has greatly inconvenienced the Marquards, raising their monthly payment by more than ten percent of their monthly net income, greatly increasing the difficulty of their ability to make said payment and the chance that they will default on their loan.

105.    On March 27, 2017, the Marquards demanded from defendants the return of the unlawfully collected and detained funds. They have refused to honor the Marquards' request.

106.    As a result of defendants' conversion of the Marquards' funds, plaintiffs are entitled to actual damages and, in addition, to costs and disbursements in bringing this claim.

## FIFTH CLAIM FOR RELIEF

(Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq*., against BONY and Shellpoint)

107.    The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

108.    Title III of the Americans with Disabilities Act, as amended, prohibits discrimination against individuals with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

109.    Mr. Marquard is a person with disabilities, in that he has physical impairment that substantially limits one or more of the major life activities. *See* 28 C.F.R. § 36.105(b)(2). He also

20-    COMPLAINT

has a record of such impairments and has been regarded as impaired. *See id.* at § 36.105(a)(1)(ii), (iii).

110.    Specifically, as a result of Mr. Marquard's two ruptured discs in his lower back, he is limited in his ability to stand, sit, and bend. On occasion, his legs go numb, and he then experiences pain for weeks.

111.    In 2014, the Social Security Administration concluded that Mr. Marquard was disabled and unable to work as a result of his disability.

112.    Both defendants are places of public accommodation under 42 U.S.C. § 12181. Moreover, Shellpoint was, at all relevant times, acting as an agent of BONY.

113.    Disability discrimination under Title III includes the failure of a public accommodation to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford its services to people with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

114.    Title III also prohibits public accommodations from imposing eligibility criteria that "tend to screen out" individuals with disabilities. *Id.* at § 12182(b)(2)(A)(i).

115.    Public accommodations may not "utilize standards or criteria or methods of administration . . . that have the effect of discriminating on the basis of disability." *Id.* at § 12182(b)(1)(D)(i).

116.    Discrimination against individuals "because of the known disability of an individual with whom the individual or entity is known to have a relationship or association" is also prohibited. *Id.* at § 12182(b)(1)(E).

21-    COMPLAINT

117.    Mr. Marquard was denied public accommodations by defendants because of his disability.  Ms. Marquard was denied public accommodations by defendants because of her association with Mr. Marquard, a person with disabilities.

118.    Specifically, the Marquards participate in the Oregon Property Tax Deferral for Disabled and Senior Citizens program because of Mr. Marquard's disability. Only those with disabilities and senior citizens, many of whom may also be people with disabilities, are eligible to participate in the program.

119.    The purpose of the deferral program for disabled citizens is to keep low-income people with disabilities, like Mr. Marquard, in their homes by relieving them of having to pay property taxes while they are incapable of making such payments.

120.    Defendants are aware that Mr. Marquard is a person with a disability, and that Ms. Marquard is his wife who lives with him and co-owns their house. They are also aware that the Marquards have been granted the Oregon Property Tax Deferral for Disabled and Senior Citizens because of Mr. Marquard's disability. Defendants are aware that through the deferral program, the State of Oregon has agreed to pay the Marquards' property taxes in November 2017.

121.    Despite knowing about the Marquards' disabilities and the deferral program, defendants nonetheless continue to insist that the Marquards pay a monthly amount commensurate with at least 1/12 of their annual property taxes.

122.    By insisting on collecting a monthly payment for property taxes they know the state of Oregon has agreed to pay because of Mr. Marquard's disabilities, defendants are discriminating against the Marquards in violation of Title III.

22-    COMPLAINT

123.    Defendants have unlawfully refused to stop escrowing the Marquards' annual property taxes as a reasonable modification to defendants' typical practice.

124.    The collection of annual property tax amounts from individuals who, by reason of their disabilities, will not pay such property taxes that year, constitutes unlawful eligibility criteria that tends to screen out people with disabilities, and an unlawful method of administration that has the effect of discriminating against people with disabilities.

125.    Defendants' inflexibility in the servicing of the Marquards' loan subverts the purpose of the Oregon Property Tax Deferral for Disabled and Senior Citizens program and renders it entirely ineffective. Despite being eligible to obtain relief from property tax payments because of Mr. Marquard's disability, the Marquards are being compelled by defendants to continue making monthly payments as if they had not been accepted into the deferral program.

126.    As a direct and proximate result of defendants' violations of Title III of the ADA, the Marquards are at risk of losing their home and becoming homeless, and will continue to carry that risk until defendants are required to, and have, come into compliance with the requirements of the ADA.

127.    Plaintiffs are entitled to injunctive and declaratory relief, as set forth below.

128.    Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to 42 U.S.C. § 12133 and 42 U.S.C. § 12205.

**SIXTH CLAIM FOR RELIEF**

(by Mr. Marquard only)

(Violation of ORS 659A.142, against BONY and Shellpoint)

23-    COMPLAINT

129.    The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

130.    Under ORS 659A.142(4), "[i]t is an unlawful practice for any place of public accommodation, resort or amusement as defined in ORS 659A.400, or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is an individual with a disability."

131.    Both defendants are "places of public accommodation" under ORS 659A.400(a) and OAR 839-006-0305. Moreover, at all relevant times, Shellpoint has acted as BONY's agent.

132.    As set forth above, Mr. Marquard is a person with a disability in that he is substantially limited in one or more major life activities. OAR 839-006-0205.

133.    ORS 659A.142 is interpreted "to the extent possible in a manner that is consistent with any similar provisions" under the ADA. ORS 659A.139.

134.    Places of public accommodation must remove administrative barriers in order to make offered goods and services accessible. OAR 839-006-0330(1).

135.    Actions public accommodation must take to avoid unlawful discrimination include "relaxing administrative policies." OAR 839-006-0330(2).

136.    By insisting on collecting a monthly payment for property taxes they know the state of Oregon has agreed to pay because of Mr. Marquard's disabilities, defendants are discriminating against Mr. Marquard in violation of ORS 659A.142.

137.    Defendants' conduct constitutes an unlawful failure to remove an administrative barrier or to relax an administrative policy regarding the collection of property tax quantities from BONY's borrowers.

24-    COMPLAINT

138.    As a direct and proximate result of defendants' violations of ORS 659A.142, Mr. Marquard is at risk of losing his home and becoming homeless, and will continue to carry that risk until defendants are required to, and have, come into compliance with the requirements of ORS 659A.142.

139.    Moreover, as a direct and proximate result of defendants' violations of ORS 659A.142, Mr. Marquard has suffered, and will continue to suffer, a loss of the amounts he and Ms. Marquard currently pay every month that is escrowed by defendants for property taxes.

140.    In addition, as a direct and proximate result of defendants' violations of ORS 659A.142, Mr. Marquard has suffered, and will continue to suffer, emotional distress including but not limited to anxiety, depression, nausea, headaches, anger, irritability and sleeplessness.

141.    Defendants are aware of Mr. Marquard's disabilities, and of Ms. Marquard's terminal cancer diagnosis. They are aware that the Marquards were accepted into the tax deferral program, because of Mr. Marquard's disabilities. Despite this knowledge, defendants have continued to charge the Marquards hundreds of dollars every month that defendants well know the State of Oregon will pay on their behalf.

142.    During a particularly vulnerable time – what are likely to be the last months of Ms. Marquard's life – the Marquards have been compelled to grapple with the specter of homelessness because of defendants' conduct.

143.    Defendants' conduct constitutes a reckless and outrageous indifference to a highly unreasonable risk of harm to Mr. Marquard, and with a conscious indifference to his health, safety and welfare.

144.    Mr. Marquard are entitled to injunctive and declaratory relief as set forth below, as well as compensatory damages and punitive damages in an amount to be determined at trial. *See* ORS 659A.885(1), (3).

145.    Mr. Marquard is entitled to his reasonable costs and attorney fees on this claim pursuant to ORS 659A.885(1).

## SEVENTH CLAIM FOR RELIEF

(Fair Housing Amendments Act, against BONY and Shellpoint)

146.    The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

147.    The FHAA prohibits "any person or other entity whose business includes engaging in residential real estate-related transactions" from discriminating against any person in making available such a transaction, or in the terms or conditions of such a transaction because of a person's disability. 42 USC § 3605(a).

148.    Mr. Marquard has a "handicap" as that term is defined in 42 U.S.C. § 3602(h).

149.    The implementing regulation of 42 USC § 3605(a) provides:

It shall be unlawful for any person or entity engaged in the making of loans or in the provision of other financial assistance relating to the purchase, construction, improvement, repair or maintenance of dwellings or which are secured by residential real estate to impose different terms or conditions for the availability of such loans or other financial assistance because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. § 100.130(a).

150.    The regulation further specifically provides that unlawful conduct under 24 C.F.R. § 100.130(a) includes:

26-    COMPLAINT

> Servicing of loans or other financial assistance with respect to dwellings in a manner that discriminates, or servicing of loans or other financial assistance which are secured by residential real estate in a manner that discriminates, or providing such loans or financial assistance with other terms or conditions that discriminate, because of race, color, religion, sex, handicap, familial status, or national origin.

*Id.* at § 100.130(b)(3).

151.    Each defendant's business includes engaging in residential real estate-related transactions. At all pertinent times, defendant Shellpoint acted as an agent of BONY.

152.    Defendants discriminated against the Marquards because of Mr. Marquard's disability in violation of 42 U.S.C. § 3605.

153.    Defendants' conduct amounts to disability discrimination in the term or condition of BONY's loan to the Marquards by overcharging them a monthly amount that, because of Mr. Marquard's disabilities, they are not required to pay through 2017.

154.    The servicing of the Marquards' home is a residential real estate related transaction within the meaning of 42 USC § 3605.

155.    Mortgage servicing under the terms set forth by Shellpoint is a term or condition of BONY's loan.

156.    As a direct and proximate result of defendants' violations of the FHAA, plaintiffs are at risk of losing their home and becoming homeless, and will continue to carry that risk until defendants are required to, and have, come into compliance with the requirements of the FHAA.

157.    Moreover, as a direct and proximate result of defendants' violations of the FHAA, plaintiffs have suffered, and will continue to suffer, a loss of any amounts they have paid or do pay every month that is escrowed by Shellpoint for property taxes.

27-    COMPLAINT

158.    In addition, as a direct and proximate result of defendants' violations of the FHAA, plaintiffs have suffered, and will continue to suffer, emotional distress.

159.    Defendants' conduct constitutes a reckless and outrageous indifference to a highly unreasonable risk of harm to the Marquards, and with a conscious indifference to their health, safety and welfare.

160.    Plaintiffs are entitled to injunctive and declaratory relief as set forth below, as well as compensatory damages and punitive damages in an amount to be determined at trial. *See* 42 U.S.C. § 3613(c).

161.    Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to 2 U.S.C. § 3613(c).

### EIGHTH CLAIM FOR RELIEF

(Violation of ORS 659A.145, against BONY and Shellpoint)

162.    The Marquards restate and re-allege the foregoing allegations of this Complaint as if fully restated herein.

163.    ORS 659A.145 prohibits disability-based discrimination in real property transactions, including discrimination because of the disability of a person with whom a plaintiff is associated.

164.    ORS 659A.145 prohibits, among other things, the refusal "to make reasonable accommodations in rules, policies, practices or services when the accommodations may be necessary to afford the individual with a disability equal opportunity to use and enjoy a dwelling."  ORS 659A.145(2)(g).

28-    COMPLAINT

165.    In addition, a "person whose business includes engaging in residential real estate related transactions, as defined in ORS 659A.421(3), may not discriminate against any individual in making a transaction available, or in the terms or conditions of the transaction, because of a disability."  ORS 659A.145(4).

166.    Defendants discriminated against the Marquards because of Mr. Marquard's disability, and because of Ms. Marquard's association with Mr. Marquard, in violation of ORS 659A.145.

167.    Defendants failed to make reasonable accommodations in their rule, policy, or practice by insisting on collecting from the Marquards monthly payments for property taxes that the state of Oregon will pay for them in November 2017 because of Mr. Marquard's disability.

168.    The servicing of the Marquards' loan is a real estate related transaction pursuant to ORS 659A.421. Mortgage servicing under the terms set forth by Shellpoint is a term or condition of BONY's loan.

169.    Defendants are discriminating against the Marquards in the terms or conditions of their loan by imposing a requirement that they make monthly payments towards property taxes the state of Oregon will pay on their behalf in 2017 because of Mr. Marquard's disability.

170.    As a direct and proximate result of defendants' violations of ORS 659A.145, the Marquards are at risk of losing their home and becoming homeless, and will continue to carry that risk until defendants are required to, and have, come into compliance with the requirements of ORS 659A.145.

29-    COMPLAINT

171.    Moreover, as a direct and proximate result of defendants' violations of ORS 659A.145, the Marquards have suffered, and will continue to suffer, a loss of the amounts they have paid or will pay every month that is escrowed by defendants for property taxes.

172.    In addition, as a direct and proximate result of defendants' violations of ORS 659A.145, the Marquards have suffered, and will continue to suffer, emotional distress.

173.    Defendants' conduct constitutes a reckless and outrageous indifference to a highly unreasonable risk of harm to the Marquards, and with a conscious indifference to their health, safety and welfare.

174.    Plaintiffs are entitled to injunctive and declaratory relief as set forth below, as well as compensatory damages and punitive damages in an amount to be determined at trial. *See* ORS 659A.885(1), (3).

175.    Plaintiffs are entitled to their reasonable costs and attorney fees on this claim pursuant to ORS 659A.885(1).

176.    Plaintiff demands a trial by jury on all issues so triable.

PRAYER FOR RELIEF

WHEREFORE, the Marquards pray that this Court:

1.    Assume jurisdiction of this case;

2.    On the Marquards' First Claim for Relief (violation of RESPA), award a judgment against defendant(s):

    a.    declaring that it/they have violated its/their obligations under 12 U.S.C. §§ 2609 and 2605; enjoining defendants from committing any future violations of RESPA; and

awarding plaintiffs actual damages, including those for emotional distress, in an amount to be determined at trial, and $2,000 in statutory damages pursuant to 12 U.S.C. § 2605(f);

        b.      awarding Plaintiff reasonable attorney's fees and litigation expenses, plus costs of suit, pursuant to 12 U.S.C. § 2605(f) and 15 U.S.C. § 1692k(3); and

        c.      for such further relief as this Court may deem necessary or proper.

    3.      On the Marquards' Second Claim for Relief (breach of contract), awarding a judgment against defendant(s):

        a.      declaring that by violating RESPA, defendants have violated their obligation to comply therewith pursuant to the deed of trust;

        b.      enjoining defendants from committing any future violations of the deed of trust;

        c.      for actual damages;

        d.      for reasonable attorney fees in addition to costs and disbursements pursuant to ORS 20.096(1);

        e.      for prejudgment interest; and

        f.      for such further relief as this Court may deem necessary or proper.

    4.      On the Marquards' Third Claim for Relief (UTPA), awarding a judgment against Shellpoint:

        a.      declaring that defendant has violated the UTPA;

        b.      enjoining defendant from committing any future violations of the UTPA pursuant to ORS 646.638(1);

31-   COMPLAINT

        c.      For plaintiff's actual damages pursuant to ORS 646.638(1) in an amount to be established at trial;

        d.      For statutory damages of $200 pursuant to ORS 646.638(1);

        e.      For punitive damages pursuant to ORS 646.638(1) in an amount of at least $250,000;

        f..      For reasonable attorney fees pursuant to ORS 646.638(3);

        g.      For costs and disbursements;

        h.      for prejudgment interest; and

        i.      For such other relief as the Court deems necessary and proper.

    5.      On the Marquards' Fourth Claim for Relief (conversion), award a judgment against defendants:

        a.      declaring that defendants have converted funds paid by the Marquards for an escrow of their property taxes the State of Oregon has agreed to pay in November 2017;

        b.      for the value of the funds converted;

        c.      for an award of costs and disbursements;

        d.      for prejudgment interest; and

        e.      For such other relief as the Court deems necessary and proper.

    6.      On the Marquards' Fifth through Eighth Claims for Relief (violation of the ADA, ORS 659A.142(4), the Fair Housing Amendments Act, and ORS 659A.145), award a judgment against defendants:

    a. declaring that defendants' acts and omissions have violated and continue to violate the Americans with Disabilities Act, ORS 659A.142(4), the Fair Housing Amendments Act and ORS 659.145;

    b. enjoining them from escrowing amounts for the Marquards' 2017 property taxes;

    c. for compensatory and punitive damages in an amount to be determined at trial but no less than $250,000;

    d. for an award of reasonable attorney fees, costs and disbursements;

    e prejudgment interest; and

    f. such other and further legal and equitable relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

  The Marquards hereby demand trial by jury.

33- COMPLAINT

DATED this 7th day of April, 2017.

LEGAL AID SERVICES OF OREGON

 s/ David L. Koen
David L. Koen, OSB No. 080941
david.koen@lasoregon.org
LEGAL AID SERVICES OF OREGON
520 SW 6th Ave., Ste. 700
Portland, OR 97204
(503) 224-4086

OREGON LAW CENTER

Emily Teplin Fox, OSB No. 121720
efox@oregonlawcenter.org
Ed Johnson, OSB No. 965737
ejohnson@oregonlawcenter.org
522 SW 5th Ave, Suite 812
Portland, OR  97204
(503) 473-8314

Of Attorneys for Plaintiffs, Linda Marquard
and David Marquard