IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LINDA MARQUARD and DAVID MARQUARD, <br><br> Plaintiffs, <br><br> v. <br><br> NEW PENN FINANCIAL, LLC, dba SHELLPOINT MORTGAGE SERVICING, and THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, as TRUSTEE FOR THE CERTIFICATEHOLDERS of CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-3, <br><br> Defendants. | Case No. 3:17-cv-549-SI <br><br> **OPINION AND ORDER** |

David L. Koen, LEGAL AID SERVICES OF OREGON, 520 SW Sixth Avenue, Suite 700, Portland, OR 97204; Emily Teplin Fox and Ed Johnson, OREGON LAW CENTER, 522 SW Fifth Avenue, Suite 812, Portland, OR 97204. Of Attorneys for Plaintiffs.

Donald G. Grant, DONALD G. GRANT, P.S., Washougal Town Square, Suite 245, 1700 Main Street, Washougal, WA 98671; Neeru Jindal, YU MOHANDESI LLP, 633 West Fifth Street, Suite 2800, Los Angeles, CA 90017. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Linda Marquard ("Mrs. Marquard") and David Marquard ("Mr. Marquard") (collectively, "the Marquards" or "Plaintiffs") bring this lawsuit against Defendants New Penn Financial, LLC, dba Shellpoint Mortgage Servicing ("Shellpoint"); and the Bank of New York Mellon, fka the Bank of New York (the "Bank") (collectively, "Defendants"). Before the Court is Plaintiffs' motion for preliminary injunction to prohibit Defendants, pending trial, from continuing to demand and collect from Plaintiffs a monthly escrow of $342.44 for Plaintiffs' anticipated 2017 property taxes. The Court held a hearing on May 31, 2017. For the following reasons, Plaintiffs' motion is granted.

## STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *see id.* at 20-23 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going

PAGE 2 – OPINION AND ORDER

to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

## FINDINGS OF FACT

In 2005, Mrs. Marquard purchased a home in Portland, Oregon. She and her husband, Mr. Marquard, have been living there ever since. Their son currently lives with them. In 2007, the Marquards refinanced their home with the loan that is at issue in this lawsuit, and Mr. Marquard was added to the title. In February 2011, Mrs. Marquard was laid off from her job as an associate director of strategic planning for an energy conservation non-profit organization. Later in 2011, the Marquards became unable to make payments on their home loan.

Mr. Marquard has two ruptured discs in his lower back, stemming from prior work, most recently from lifting a concrete fountain at a nursery. His injury causes him back pain and numbness in his legs. He is substantially limited in his ability to sit, stand, and bend. In 2015, the Social Security Administration found him to be disabled.

In August 2015, Mrs. Marquard began working part-time as a cashier at a Fred Meyer supermarket, earning $10.50 per hour. In March 2016, Mrs. Marquard was diagnosed with non-small cell lung cancer. She then underwent surgery to remove the upper lobe of her right lung. In September 2016, Mrs. Marquard learned that her cancer had spread, and she was diagnosed with Stage IV non-small cell lung cancer. She has been unable to work since then. On September 29, 2016, Mrs. Marquard applied for Social Security Disability Insurance ("SSDI") under the Social Security Administration's expedited Compassionate Allowances Initiative. Her application was approved. She receives $2,485 per month in SSDI benefits.[1]

---

[1] Mr. Marquard has not received disability benefits from the Social Security Administration since Mrs. Marquard began receiving SSDI benefits.

PAGE 3 – OPINION AND ORDER

Defendant Shellpoint has been the mortgage servicer for Plaintiffs' home loan since December 1, 2016, when it succeeded Plaintiffs' former servicer, Specialized Loan Servicing LLC ("SLS").

For the loan that is at issue in this lawsuit, Plaintiffs entered into their mortgage arrangement on January 26, 2007. Paragraph 3 of their Deed of Trust provides:

> Borrower shall pay to Lender . . . a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property . . . . These items are called "Escrow Items." . . . Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.
>
> Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) ***not to exceed the maximum amount a lender can require under RESPA***. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

ECF 16-3 at 4 (Deed of Trust ¶ 3) (emphasis added). The Deed of Trust also provides: "If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA." ECF 16-3 at 4 (Deed of Trust ¶ 3).

On June 14, 2016, the Oregon Department of Revenue ("DOR") approved Plaintiffs' application for property tax deferral. Under the program (the "Oregon Tax Deferral Program"), the State of Oregon agreed to pay Plaintiffs' property taxes to Multnomah County on an annual basis, beginning November 15, 2016. Also under the program, on July 14, 2016, the State placed a lien on Plaintiffs' property to secure repayment of the property taxes paid by the State for Plaintiffs. In a confirmation letter sent to Plaintiffs, the DOR advised Plaintiffs:

> If your mortgage company includes property tax in your monthly mortgage payments, tell them the state is paying your property

> taxes. They may adjust your mortgage payments. We recommend
> you send the mortgage company a copy of this letter.

ECF 17-2 at 1. The confirmation letter also states that Plaintiffs will remain in the Tax Deferral Program at least through the end of 2017 unless they become ineligible. Plaintiffs may become ineligible if "[t]he ownership of the property changes," "[t]he deferral applicant[s] die[]," or "[t]he deferral applicant[s] move[] from the property for any reason other than health reasons." ECF 17-2 at 1; *see also* Or. Rev. Stat. § 311.684.

On November 1, 2016, Plaintiffs applied for a loan modification under the Home Affordable Modification Program ("HAMP"). Plaintiffs' loan modification application included a copy of their property tax deferral approval letter. Also on November 1, 2016, Plaintiffs, through their attorney, informed SLS, Shellpoint's predecessor as Plaintiffs' loan servicer, that Plaintiffs had been accepted into the Oregon Tax Deferral Program. Plaintiffs' attorney sent to the attorney for SLS, James A. Craft ("Craft"), proof that Plaintiffs' property tax deferral had been uploaded to the Oregon Foreclosure Avoidance Program portal.

On November 7, 2016, Plaintiffs and their attorney met with a representative of SLS, who informed Plaintiffs that they could make trial-period modification payments in the monthly amount of $2,105.83, which would include an escrow for one-twelfth of Plaintiffs' anticipated annual property taxes. At that meeting, Plaintiffs' attorney requested that SLS not require as part of Plaintiffs' trial-period payments any amount for an escrow of property taxes. At the meeting, SLS refused to grant the request. Instead, SLS stated at the meeting that if Plaintiffs made all three payments under the trial-period modification, SLS would reanalyze the escrow account for Plaintiffs' loan. SLS's representation that it would reanalyze the escrow account led Plaintiffs to believe that after the trial period, an escrow for property taxes would no longer be included in Plaintiffs' loan.

PAGE 5 – OPINION AND ORDER

The documentation accompanying Plaintiffs' HAMP trial period offer states:

> If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:
>
> - You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

ECF 17-5 at 5; *see also* ECF 17-5 at 4 ("Your new monthly payment will include an escrow for property taxes . . . .").

On January 20, 2017, Mr. Marquard sent Shellpoint, SLS's successor loan servicer, an email, informing SLS that Plaintiffs had been accepted into the Oregon Tax Deferral Program. With that email, Mr. Marquard included a copy of the State of Oregon Property Tax Deferral Application Approval. ECF 17-6 at 4-5.

Further, on February 1, 2017, Plaintiffs sent Shellpoint a letter, by certified mail, stating:

> On November 1, 2016, we provided SLS with the enclosed documentary evidence that we had received a property tax deferral from the State of Oregon whereby for the tax years of 2016 and 2017, the State will pay our property taxes.

ECF 17-7 at 1. In their letter of February 1, 2017, Plaintiffs

> request again that you immediately adjust our escrow payment to, at most, $74.08. The payment should be based on the homeowners [sic] insurance premium in place since November 5 and should not include amounts for property taxes as the State of Oregon, not Shellpoint, will be paying them.

ECF 17-7 at 2.

Shellpoint responded on February 20, 2017. Shellpoint stated that

> ***we do not have information from the state of Oregon advising that your property taxes will be temporarily paid for by another entity*** or that your taxes are not due for 2017. As a result, our escrow analysis includes a disbursement for your property taxes estimated in the amount of $4,109.31 which is calculated into the escrow payment. If you have documentation advising that your

PAGE 6 – OPINION AND ORDER

> 2017 property taxes have been paid or are not due, please send this documentation to us. Once we received [sic] this additional information, we will further investigate the matter and adjust accordingly.

ECF 18-6 at 1 (emphasis added). On February 27, Plaintiffs' attorney provided to Craft, who also represented Shellpoint, copies of the letter from the Oregon DOR confirming Plaintiffs' participation in the Oregon Tax Deferral Program. ECF 18-7.

On March 9, 2017, Plaintiffs signed a permanent HAMP Agreement. The HAMP Agreement specifies monthly escrow payments of $447.00, which "may be adjusted periodically in accordance with applicable law and therefore [the] total monthly payment may change accordingly." ECF 17-8 at 2 (HAMP Agreement ¶ 3.C). The HAMP Agreement also states that "all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect . . . ." ECF 17-8 at 2 (HAMP Agreement ¶ 4.A). Plaintiffs agreed "[t]o comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including [the] agreement to make all payments of taxes, . . . the amount of which may change periodically over the term of [the] Loan." ECF 17-8 at 2 (HAMP Agreement ¶ 4.C). Plaintiffs further agreed "[t]hat this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and [the borrower has] been advised of the amount needed to fully fund [the] escrow account." ECF 17-8 at 2 (HAMP Agreement ¶ 4.D).

Plaintiffs are not currently in breach of their mortgage payment obligations. Yet, they are in precarious financial circumstances. Plaintiffs currently make monthly payments to Shellpoint of $2,007.28, which includes an escrow payment of $342.44 for anticipated 2017 property taxes. Defendants represent that Shellpoint will not foreclose, or commence foreclosure proceedings, on Plaintiffs' property before this Court's decision on the merits of Plaintiffs' claims.

PAGE 7 – OPINION AND ORDER

Notwithstanding this representation, Plaintiffs live in daily fear that, due to their financial situation, they will fall behind again, default on their loan, and risk losing their home and end up homeless. As a result of this fear, Mrs. Marquard has suffered and will likely continue to suffer severe emotional distress, including but not limited to anxiety, depression, nausea, headaches, anger, irritability, and sleeplessness. Mr. Marquard has suffered and will likely continue to suffer severe emotional distress, depression, headaches, anger, irritability, and sleeplessness. As a further result, Mr. Marquard grinds his teeth during his sleep, leading to headaches, hearing loss, and trouble eating. His teeth-grinding also has forced him to seek treatment from a physical therapist and will require that he obtain special dental care.

## CONCLUSIONS OF LAW

### A. Likelihood of Success on the Merits

#### 1. RESPA

Plaintiffs allege that, among other things, Shellpoint violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605(e)(2)(A)-(B), 12 C.F.R. § 1024.35(a), and 12 C.F.R. § 1024.35(e)(1)(i)(A)-(B), by failing to conduct a reasonable investigation in response to Plaintiffs' February 1, 2017 letter, requesting that Shellpoint correct Plaintiffs' account. The Court finds that Plaintiffs' February 1, 2017 letter to Shellpoint was a qualified written request ("QWR") because it "enables [Shellpoint] to identify[] the name and account of" Plaintiffs and provides detailed reasons why Plaintiffs believe Shellpoint should not require an escrow for property taxes. 12 U.S.C. § 2605(e)(1)(B).

Plaintiffs are likely to prevail, or at the minimum have raised serious questions going to the merits, on their claim that Shellpoint did not conduct a reasonable investigation before responding to Plaintiffs' QWR. 12 U.S.C. § 2605(e)(2)(B), (e)(2)(C); 12 C.F.R. § 1024.35(e)(1)(i)(B). Shellpoint responded to Plaintiffs' QWR, stating that "we do not have

PAGE 8 – OPINION AND ORDER

information from the state of Oregon advising that your property taxes will be temporarily paid for by another entity . . . ." ECF 18-6 at 1. If Shellpoint had conducted a reasonable investigation, however, it would have discovered that it already had "information from the state of Oregon advising that [Plaintiffs'] property taxes will be temporarily paid for by another entity." This is based on the fact that Plaintiffs previously had sent notice of their acceptance into the Oregon Tax Deferral Program to SLS in November 2016 and to Shellpoint directly on January 20, 2017. ECF 17-6 at 1. Further, the Oregon DOR's July 2016 recorded lien on Plaintiffs' property also placed Shellpoint on constructive notice of Plaintiffs' acceptance into the Oregon Tax Deferral Program. ECF 18-1.

Plaintiffs also have shown a substantial likelihood of success, or at least have raised serious questions going to the merits, on their claim that Shellpoint failed to "make appropriate corrections in the account of the borrower" in response to their request to cease collecting the escrow because Shellpoint continued to collect the escrow despite the fact that the State of Oregon had agreed to pay the taxes. 12 U.S.C. § 2605(e)(2)(A). Under Section 2609 of RESPA, which Plaintiffs cite only as a predicate to their claims for violation of Section 2605 and the Deed of Trust, a lender cannot require a borrower

> to deposit in [an] escrow account in any month . . . a sum (*for the purpose of assuring payment of taxes*, insurance premiums and other charges with respect to the property) in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are ***reasonably anticipated to be paid on dates during the ensuing twelve months*** . . . plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid . . . ***during the ensuing twelve-month period*** . . . .

12 U.S.C. § 2609(a)(2) (emphasis added). Plaintiffs' escrow of $342.44 cannot be "for the purpose of assuring payment of taxes . . . which are reasonably anticipated to be paid . . . during

PAGE 9 – OPINION AND ORDER

the ensuing twelve months" until at least August 15, 2017. This is because even if Plaintiffs become ineligible for the Oregon Tax Deferral Program at some point in 2017, their deferred taxes for 2017 will not be due until August 15, 2018, at the earliest. *See* Or. Rev. Stat. § 311.686(1)(b).

Shellpoint's arguments under RESPA are unavailing. Shellpoint argues that Plaintiffs have not alleged a causal connection between their damages and Shellpoint's alleged failure adequately to respond to Plaintiffs' QWR. Plaintiffs respond that but for Shellpoint's refusal to "make appropriate corrections" to their account, Plaintiffs must pay a monthly escrow for property taxes and that doing so while in the precarious financial condition that Plaintiffs are in have caused and threatens to continue to cause Plaintiffs severe emotional and physical distress. This is sufficient causation.

Shellpoint also argues that injunctive relief is not available for a RESPA violation. *See Barker v. GMAC Mortg., LLC*, 2011 WL 3360677 (D. Or. Aug. 3, 2011). In *Barker*, the court found the plaintiff's allegations that

> lenders violated RESPA by failing to provide the original copies of the promissory note and trust deed . . . fail[ed] to justify a preliminary injunction because RESPA violations are penalized with monetary damages, not setting aside a foreclosure. Because his RESPA recovery, if any, will be strictly monetary there is no irreparable injury and the immediate balance of hardships does not tip sharply in his favor.

*Id.* at *2 (internal citation omitted). Unlike the plaintiff in *Barker*, however, Plaintiffs do not seek to set aside a foreclosure. Rather, Plaintiffs seek an injunction prohibiting Shellpoint from continuing to demand and collect from Plaintiffs a monthly escrow that includes property taxes. Shellpoint cites no authority that limits the Court's inherent power to enjoin this conduct. *See Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary

from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.").[2]

### 2. Breach of Contract

Plaintiffs also allege that, among other things, Defendant Bank has breached the Deed of Trust by collecting and holding funds in an escrow account in an amount exceeding the maximum amount that the Bank lawfully may collect under RESPA. The Deed of Trust states: "Lender may, at any time, collect and hold [funds for property taxes] in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA." ECF 16-3 at 4 (Deed of Trust ¶ 3). Plaintiffs are likely to succeed on the merits, or have at least shown serious questions going to the merits, on their claim that the Bank has collected escrow funds in an amount exceeding the maximum allowable amount under RESPA.

The Bank argues that the HAMP Agreement modified its duty in the Deed of Trust not to "collect and hold Funds in an amount . . . not to exceed the maximum amount a lender can require under RESPA." ECF 16-3 at 4 (Deed of Trust ¶ 3). The Bank, however, does not cite any provision in the HAMP Agreement that expressly modifies the Bank's duty to comply with RESPA. Indeed, the contrary is true; the Bank must comply with all applicable laws and regulations. *See generally* ECF 17-8 at 2 (HAMP Agreement ¶ 4.A) ("[A]ll terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect . . . ."). The HAMP Agreement also specifies that monthly escrow payments "may be

---

[2] Shellpoint also argues that neither 12 U.S.C. § 2609 nor 12 C.F.R. § 1024.17(c)(1)(ii) authorize a private right of action. Plaintiffs, however, do not seek to enjoin Defendants from violating 12 U.S.C. § 2609. Instead, Defendants' alleged violation of Section 2609, argue Plaintiffs, is simply a prerequisite to Plaintiffs' claims under 12 U.S.C. § 2605(e) and for breach of the Deed of Trust.

PAGE 11 – OPINION AND ORDER

adjusted periodically in accordance with applicable law." ECF 17-8 at 2 (HAMP Agreement ¶ 3.C). Moreover, HAMP Guidelines require that "[a]ll of the borrower's monthly payments must include a monthly escrow amount unless prohibited by applicable law."[3] ECF 23-3 at 2.

### 3. Oregon Unlawful Trade Practices Act (UTPA)

Plaintiffs allege that Shellpoint's violations of 12 U.S.C. § 2605(e) constitute "unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1)(u); Or. Admin. R. 137-020-0805(5)-(6). Because the Court finds that Plaintiffs have at least raised serious questions going to the merits of their RESPA claim, the Court agrees with Plaintiffs.[4]

### 4. Disability Discrimination

Plaintiffs allege that Defendants' insistence on requiring an escrow for property taxes constitutes disability discrimination against: (1) Mr. Marquard in violation of Or. Rev. Stat. § 659A.142(4); (2) both Plaintiffs in violation of the Fair Housing Amendments Act, 42 U.S.C. § 3605(a) and 24 C.F.R. § 100.130(a), (b)(3); and (3) both Plaintiffs in violation of Or. Rev. Stat. § 659A.145. The Court finds that Plaintiffs have raised serious questions going to the merits of their claims for disability discrimination.

---

[3] Defendants filed excerpts of version 5.0 of the HAMP Guidelines, effective January 6. 2016. ECF 23-3 at 1. Plaintiffs respond that version 5.1 of the HAMP Guidelines, effective May 26, 2016, was in effect when Plaintiffs signed the HAMP Agreement on March 9, 2017. ECF 17-8. A copy of version 5.1 is available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_51.pdf. The Court finds that version 5.0 does not differ materially from version 5.1 and thus considers Defendants' excerpts from version 5.0.

[4] Shellpoint argues that Plaintiffs' UTPA claim requires Plaintiffs to have suffered an "ascertainable loss" as a result of Shellpoint's conduct and that Plaintiffs have suffered no such loss. *See State ex rel. Redden v. Discount Fabrics, Inc.*, 289 Or. 375, 384 (1980). The Court finds that there are at least serious questions as to whether Plaintiffs' escrow payment of $342.44 per month to Shellpoint constitutes an ascertainable loss "as a result of another person's willful use or employment of a method, act or practice declared unlawful." *See* Or. Rev. Stat. § 646.638(1).

B.  Irreparable Harm

Defendants argue that Plaintiffs are unlikely to suffer irreparable harm in the absence of the preliminary injunction because "Shellpoint will not foreclose, or commence foreclosure proceedings, on Plaintiffs' property prior to this Court's decision on the merits of Plaintiffs' claim[s] . . . ." ECF 23 ¶¶ 1, 14; *see Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) (holding that "[s]peculative injury does not constitute irreparable injury"). Notwithstanding Defendants' representation, Plaintiffs live in daily fear that, due to their precarious financial situation, they will fall behind again, default on their loan, and risk losing their home and end up homeless. Plaintiffs also fear that their inability to make their monthly payments will cause them to suffer a negative credit rating, the assessment of property inspection fees, and other adverse consequences specified in the Note and the Deed of Trust. *See* ECF 16-2 at 2 (Note ¶¶ 7(A)-(C)); ECF 16-3 at 8 (Deed of Trust ¶ 14). This fear causes Plaintiffs severe emotional and physical distress. Based on this daily fear, the Court concludes that Plaintiffs are likely to continue to suffer irreparable harm in the absence of preliminary injunctive relief. In addition, even if Plaintiffs ultimately prevail in this litigation, Mrs. Marquard may never benefit financially from the elimination of the $342.44 per month escrow for property taxes. Mrs. Marquard has Stage IV non-small cell lung cancer. Mrs. Marquard may not survive until the Court resolves her claims.

Further, if Defendants continue to require Plaintiffs to make monthly escrow payments for property taxes, Plaintiffs will likely miss their mortgage payments and suffer the consequences. *See* ECF 16 ¶ 26 (Mrs. Marquard stating that "we will almost certainly fall behind [on payments] again"). Despite Defendants' representation that they will not foreclose on Plaintiffs' home before the resolution of this case, the Note and Deed of Trust contain additional rights that Defendants have not waived. If Plaintiffs do not make their monthly mortgage

PAGE 13 – OPINION AND ORDER

payments in full, they will owe a 5 percent penalty; will be in default; may be subject to additional fees, such as inspection fees; and may be required to pay the principal and interest by a specified date. ECF 16-2 at 2 (Note ¶¶ 7(A)-(C)); ECF 16-3 at 8 (Deed of Trust ¶ 14). Moreover, in a March 2017 mortgage statement, Shellpoint expressly warned Plaintiffs: "As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." ECF 30-2 at 2. Shellpoint also expressly warned Plaintiffs that "[a]ny partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law."[5] ECF 30-2 at 1. These consequences of missed payments will only exacerbate the immediate concerns of Plaintiffs.

Finally, reducing Plaintiffs' mortgage and escrow requirement by $342.44 per month will make it substantially more likely that Plaintiffs can make their payments in full and thus not default on their loan. *Cf. Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1159 (9th Cir. 2011) (upholding the issuance of a preliminary injunction and observing that "Defendants communicated an intention to charge [higher] market rates for the individual Plaintiffs' apartments, and Plaintiffs demonstrated an inability to pay those market rates").

---

[5] Defendants object to Mr. Koen's Declaration (ECF 30-1) and the March 2017 mortgage statement (ECF 30-2) because Plaintiffs filed these documents with their reply. These materials, however, merely respond to Defendants' argument that Plaintiffs will suffer no irreparable harm in the absence of imminent foreclosure. Defendants also argue that the mortgage statement is inadmissible hearsay and has not been properly authenticated. The Court overrules these objections as stated on the record at the hearing. Further, even if the mortgage statement were inadmissible under the rules of evidence, the Court exercises its discretion to consider it. *See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings.").

PAGE 14 – OPINION AND ORDER

### C. Balance of Equities

In the absence of a preliminary injunction, Plaintiffs will continue to suffer emotional and physical distress and remain more vulnerable to missing a mortgage payment. The quality of the end of Mrs. Marquard's life also will be substantially lower. On the other hand, if the injunction issues, Defendants will collect $342.44 less per month during the pendency of this litigation. "[T]he physical and emotional suffering shown by plaintiffs in the record . . . is far more compelling than the possibility of some . . . monetary loss . . . ." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). The balance of equities tips sharply in favor of Plaintiffs.

### D. Public Interest

Defendants argue that public interest is a neutral factor in this case because the preliminary injunction would have no effect on non-parties. *See Bernhardt v. L.A. Cty.*, 339 F.3d 920, 932 (9th Cir. 2003) (holding that where the injunction has no effect on non-parties, "[t]he public interest is . . . a neutral factor, weighing neither for nor against a[n] . . . injunction"). Plaintiffs respond that the injunction would serve the public's interest in ensuring the efficacy of Oregon's Tax Deferral Program, and the City of Portland has an interest in ensuring that its housing crisis is not exacerbated. The Court agrees with Plaintiffs.

### E. Bond

Defendants request that the Court order Plaintiffs to post a bond in the amount of $4,109.31 to cover Plaintiffs' estimated property taxes for 2017. The Court denies this request. Such a bond would nullify the preliminary injunction's benefits to Plaintiffs. Moreover, Defendants have not demonstrated that the preliminary injunction would cause them to face a "realistic likelihood of harm" at this stage of the proceedings because the State of Oregon has agreed to pay Plaintiffs' property taxes for 2017. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is

no realistic likelihood of harm to the defendant from enjoining his or her conduct."). Indeed, Defendants have not tendered any evidence as to how the cessation of receiving monthly escrow payments would harm them during the pendency of the litigation. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (finding that "defendants did not tender any evidence of the issue" of how they would be harmed if found to have been wrongfully enjoined).

## PRELIMINARY INJUNCTION ORDER

Plaintiffs' Motion for Preliminary Injunction (ECF 15) is GRANTED. Defendant New Penn Financial, LLC, dba Shellpoint Mortgage Servicing, and Defendant The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2007-3, shall immediately cease demanding or collecting from Plaintiff Linda Marquard or Plaintiff David Marquard, or both of them, monthly amounts of one-twelfth of the Marquard's anticipated annual property tax obligation. Plaintiffs need not post any bond for this order of preliminary injunction to be effective.

**IT IS SO ORDERED**.

DATED this 31st day of May, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge